UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**SCOTT DAVID BOWEN**,

        Petitioner,

v.

**MARK NOOTH**, Superintendent, Snake River Correctional Institution,

        Respondent.

Case No. 2:13-cv-00748 -KI

OPINION AND ORDER

C. Renee Manes
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, OR 97204

    Attorney for Petitioner

Frederick M. Boss
Deputy Attorney General

Page 1 - OPINION AND ORDER

Samuel A. Kubernick
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

    Attorneys for Respondent

KING, Judge:

Petitioner Scott David Bowen, an inmate in the custody of the Oregon Department of Corrections, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, I deny the petition and dismiss this proceeding with prejudice.

## PROCEDURAL BACKGROUND

In 2005, a jury convicted Bowen of five counts of first-degree sexual abuse, two counts of first-degree sodomy, and one count of first-degree rape as a result of Bowen's abuse of his minor step-daughter between 1991 and 2002. Ten jurors[1] voted to convict and two found him not guilty of all the charges. The trial court sentenced Bowen to 200 months' imprisonment.

T.H., Bowen's step-daughter who was 18 years old at the time of trial, testified that during the time she was six to eight years old, Bowen sexually abused her by touching her, asking her to touch him, and putting his penis in her mouth. She gave detailed testimony. Bowen called it playing make-you-feel-good. She testified that around the time she was eight, her mother found her crying in her bed. They began talking and her mother asked T.H. if Bowen had been touching her. When T.H. said yes, her mother took her to the living room to confront

---

[1] In Oregon, only ten jurors need be unanimous to reach a verdict. ORS 136.450; Or. Const., Art. I, § 11.

Bowen. T.H. testified that after this event, her mother started staying home. T.H. did not testify to any touching between the ages of 9 and 15.

T.H. also testified to drinking alcohol before the family moved in the summer prior to seventh grade. Toward the end of eighth grade, she began experimenting with methamphetamine she found in a toolbox in the basement of the family's home. She stopped going to school, began using drugs all of the time, and hung out with people who engaged in criminal activity. She became sexually active. She came home every few weeks and only stayed there for a day or two. At some point, she was reported as a runaway.

During one of the times T.H. was home, when she was about 15 years old, she was down in the basement with Bowen. Bowen asked her if she would "take a line" if he offered it to her. Resp't Ex. 104, Tr. Vol. 2, at 158. She agreed and snorted a line of methamphetamine. Pornography was on the television and they each began to masturbate. Bowen put his penis in T.H.'s mouth.

One other time when she was down in the basement doing laundry or getting a cigarette or smoking marijuana–she was not certain–Bowen took methamphetamine out of his toolbox and offered T.H. a line. Pornography was again playing on the television. T.H. sat on Bowen facing him and Bowen put his penis in her vagina.

At some point, T.H.'s parents told T.H. to move out. On cross-examination, T.H. agreed the last conversation she had with her parents consisted of an argument about her bringing boys into the house. T.H. told Bowen and her mother, "I will lay with whoever I want." Resp't Ex. 105, Tr. Vol. 3, at 179. Bowen told her not in his house. T.H. responded, "We'll see how long this is your house." Id. On December 4, 2002, police found T.H. when they served a warrant on

Page 3 - OPINION AND ORDER

a resident of a house where T.H. had been staying. Because T.H. had been reported as a runaway, police dropped her back at her parent's house. When she realized where she was going, she told police she was not any safer at her parents' house than anywhere else.

At the time of her testimony, T.H. had been clean and sober for a year and a half.

The state also called T.H.'s childhood friend, who testified that when she was about seven years old T.H. confided that Bowen had touched her vagina.

T.H.'s mother, Anna Bowen, testified that she, T.H. and another childhood friend of T.H.'s had a conversation about Bowen sexually touching T.H. She and T.H. then confronted Bowen. As a result of that conversation, Anna Bowen quit her job so she could stay home.

Dr. Arlene Ritzen, a pediatrician at CARES Northwest,[2] testified to her findings about T.H. based upon interviews and a physical examination that took place on February 5 and 12, 2003. Her testimony is the sole subject of Bowen's habeas petition. Dr. Ritzen's physical examination of T.H. revealed scars from intravenous drug use. There was a partial separation in T.H.'s hymen which could have been evidence of a penetrating trauma. Dr. Ritzen conceded, however, that the partial separation could also have been the result of T.H.'s consensual sexual activity. The prosecutor then asked Dr. Ritzen:

> Q: Okay. Dr. Ritzen, based upon your medical evaluation of [T.H.] as well as the interviews, did you reach a diagnosis with a degree of medical certainty?
>
> A: Yes.
>
> Q: And what is that diagnosis?
>
> A: I made a diagnosis of sexual abuse.

---

[2] A clinic designed to diagnose and treat child abuse.

Page 4 - OPINION AND ORDER

Q: And what is that based on?

A: The physical examination and our talking time and history gathering of [T.H.].

Q: And can you give us an outline of those findings during the evaluation –or I'm sorry, the interview that you relied upon.

A: Well, first of all, I –for making my diagnosis, I always keep the two together, the physical examination and in that where we also talked about why she was there today – at that evaluation so I never separate the physical examination and the talking time. And – but during her – the history gathering, the interview, she talked about sexual abuse.

Q: And during your interview with her – during the interview with her--

A: Uh-huh.

Q: – is it important for you to reach your diagnosis to listen for who the perpetrator of the sexual abuse is?

A: Yes.

Q: And did you reach a conclusion as to that fact?

A: Yes.

Q: And who was that?

A: [T.H.]'s stepfather, Scott Bowen.

Q: And did you make treatment recommendations for this child?

A: Yes.

Q: And what were they?

A: The first treatment recommendation is that she have no further contact with Scott Bowen based on what she – her physical examination and what she talked about with us today – at that time and that she enter into individual therapy.

MR. HAMALIAN: I object as to relevance, Your Honor.

THE COURT: Overruled.

Page 5 - OPINION AND ORDER

Resp't Ex. 105, Tr. Vol. 3, at 282-84.

Dr. Ritzen conceded on cross-examination that T.H. revealed she had been sexually active in a consensual manner with other people and that the doctor's physical examination findings could be consistent with T.H.'s normal, active sex life.[3] The doctor found no other evidence of sexual abuse in her physical examination of T.H. Bowen's counsel elicited a concession from Dr. Ritzen that her report focused solely on Bowen and did not address any other sex partners, including the age of any other partner or the legality of any other sexual interactions.

After Dr. Ritzen testified, Bowen's attorney called his investigator who testified about Anna Bowen's report that T.H. "would tell me that I was stupid and that people would believe her before they would ever believe me." Resp't Ex. 105, Tr. Vol. 3, at 307. Bowen's attorney also called T.H.'s father, with whom T.H. had visited from the time she was four or five, and with whom she had lived for a period of months around the age of 16. T.H.'s father described getting T.H. admitted to a drug and alcohol treatment program, which she quit. He testified he did not believe T.H. was trustworthy and that T.H. never told him Bowen had abused her or had sex with her. Bowen's attorney called T.H.'s step-mother who testified T.H. never reported any improper overtures by Bowen, that T.H. had lied to her in the past, and that T.H. had refused to follow the rules of the household. Bowen's attorney also called T.H.'s grandfather, who lived in

---

[3]Dr. Ritzen also testified that T.H. had a sexually transmitted disease, but contrary to petitioner's counsel's repeated assertions, I see no evidence or testimony about whether Bowen did or did not have the same disease. Bowen's counsel does not provide a citation to the record to support her assertion that Bowen did not have the same sexually transmitted disease. Dr. Ritzen testified she had no knowledge of Bowen's medical history. Resp't Ex. 105, Tr. Vol. 3, at 296.

Page 6 - OPINION AND ORDER

T.H.'s neighborhood when T.H. was young. He testified T.H. never disclosed any problem with Bowen, she called Bowen "Dad," and she did not start misbehaving until she began attending junior high school. Finally, Bowen's attorney called T.H.'s step-brother, who testified T.H. told him she did not like Bowen because she did not like him being with her mother.

## DISCUSSION

In his only ground for relief, Bowen alleges his trial counsel was ineffective for failing to object to Dr. Ritzen's testimony.[4] Specifically, he asserts his trial counsel was ineffective for: (1) failing to object to Dr. Ritzen's diagnosis of sexual abuse in the absence of any physical findings to corroborate such a diagnosis when State v. Southard, 347 Or. 127, 139-41, 218 P.3d 104 (2009) justifies such an objection; and (2) for failing to object to Dr. Ritzen's assertion that Bowen was the perpetrator of the abuse.

I.    Exhaustion and Procedural Default

Respondent questions whether Bowen properly exhausted his ineffective assistance of trial counsel claim.

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1)(A). A state prisoner satisfies the exhaustion requirement by "fairly presenting" his claim to the appropriate state courts at all appellate stages afforded under state law, including a state supreme court with powers of discretionary review. Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan v. Boerckel, 526 U.S. 838, 845-47 (1999). When a

---

[4]In the same ground, Bowen also appears to allege a claim of ineffective post-conviction counsel. Such a claim is not cognizable and is dismissed. Coleman v. Thompson, 501 U.S. 722, 752-53 (1991).

Page 7 - OPINION AND ORDER

state prisoner fails to exhaust his federal claims in state court, and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally defaulted. O'Sullivan, 526 U.S. at 848; Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).

Here, Bowen filed a post-conviction petition on April 7, 2010 and did not raise the claim of ineffective assistance of trial counsel he brings now. Resp't Ex. 126. Bowen subsequently brought a successive petition, on May 31, 2011, conceding he had previously filed a petition for post-conviction relief, and relying on Southard to allege ineffective assistance of trial counsel for failing to object to expert testimony diagnosing sexual abuse. Bowen did not raise any argument regarding his trial counsel's failure to object to Dr. Ritzen's assertion that Bowen was the perpetrator of the abuse. Resp't Ex. 138.

The PCR court dismissed the second petition with an order, which read in relevant part:

> Defendant contends that ORS 138.550(3) applies to bar this petition, as Plaintiff previously filed a Petition for Post-Conviction relief in Case Number 08-10-6957P.
>
> Plaintiff argues that the case of State v. Southard, 374 Or App 656 (2001) [sic] should be applied retroactively to his case, providing a basis for post-conviction relief. The case of Umberger v. Czerniak, 232 Or App 563 (2009) is controlling her[e]. Umberger held that the rule in Southard does not apply retroactively to ineffective assistance of counsel claims. Plaintiff argues that the counsel was ineffective for failing to essential[ly] make the arguments based on existing case law prior to Southard[]. As Defendant points out, any arguments based on case law that existed when Petitioner could have filed within the statute of limitations are now barred by the Stat[ute] of Limitations. Plaintiff does not raise any issues in this petition that could not or were not raised in the prior action, nor does he give any reason why they could not have been raised.
>
> Defendant's motion is therefore granted, and Summary Judgment is granted in favor of Defendant. Further, the Court specific[ally] finds this Petition is without merit.

Resp't Ex. 145. The Oregon Court of Appeals summarily affirmed "on the ground that the appeal does not present a substantial question of law." Resp't Ex. 149, at App. A.

The PCR court held Bowen's second petition was untimely, successive, and, in any event, lacked merit.[5] Thus, the PCR court expressly invoked an independent and adequate state rule to deny Bowen's petition. Coleman, 501 U.S. at 729–30. Bowen has not alleged any facts or presented any arguments to indicate that the rule regarding successive petitions was unclear, inconsistent, or anything other than well-established.[6] See Collier v. Bayer, 408 F.3d 1279, 1284 (9th Cir. 2005) (a state procedural rule is "adequate" for purposes of preclusion if it is clear, consistently applied, and well-established at the time of a petitioner's purported default); Bennett v. Mueller, 322 F.3d 573, 581 (9th Cir. 2003) (a state procedural rule is "independent" for purposes of preclusion if it is not interwoven with federal law and the state court explicitly invoked the rule as the basis for its decision). Notably, "[a] state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim." Bennett, 322 F.3d at 580 (9th Cir. 2003). Since the Oregon Court of Appeals summarily affirmed, and the last reasoned decision on Bowen's ineffective assistance of trial counsel claim clearly and expressly rested on an independent and adequate state ground, both

---

[5] A petition for post-conviction relief must be filed within two years of judgment if no appeal is taken, or within two years of final appeal if appeal is taken. These timeframes may be extended where "the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition." ORS 138.510(3). Further, all grounds for relief must be asserted in the original petition, unless the grounds "could not reasonably have been raised in the original or amended petition[.]" ORS 138.550(3).

[6] In fact, Bowen concedes his claim is procedurally defaulted.

Page 9 - OPINION AND ORDER

parts of Bowen's ineffective assistance of trial counsel claim are procedurally defaulted. See Lambright v. Stewart, 241 F.3d 1201, 1205 (9th Cir. 2001).

II.     Application of Martinez v. Ryan

Bowen relies on Martinez v. Ryan, 132 S. Ct. 1309, 1313 (2012) as a basis for establishing "cause" for his default. In that case, the Supreme Court held ineffective assistance of counsel in an initial-review state collateral proceeding may provide cause to excuse the procedural default of an ineffective assistance of trial counsel claim, provided that the defaulted claim is "substantial." 132 S. Ct. at 1318-20. Accordingly, to invoke this narrow exception, Bowen must persuade the court that: (1) his ineffective assistance of trial counsel claim was "substantial;" (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review was the "initial" review proceeding; and (4) state law requires that an ineffective assistance of counsel claim be raised in an initial-review collateral proceeding. Trevino v. Thaler, 133 S. Ct. 1911, 1918 (2013) (citing Martinez, 132 S. Ct. at 1318-19). Only the first two factors are at issue.

Thus, in order to proceed to the merits of his ineffective assistance of counsel claim, Bowen must demonstrate that (1) his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that . . . the claim has some merit," and (2) establish that post-conviction counsel was ineffective under the standards of Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Clabourne v. Ryan, 745 F.3d 362, 377 (9th Cir. 2014) (quoting Martinez, 132 S. Ct. at 1318).

A claim must be examined under the two-part test set out in Strickland to determine whether it is substantial. Pursuant to that test, petitioner must show both (1) that the attorney's performance fell below an objective standard of reasonableness; and (2) that the performance prejudiced the defense. Strickland, 466 U.S. at 687, 688. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, or what "might be considered sound trial strategy." Id. at 689. Reasonableness is judged as of the time of counsel's conduct, not in hindsight. Id. at 689-90. A defendant is prejudiced by counsel's poor performance if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

The substantiality of the claim and the ineffectiveness of post-conviction counsel factors are interwoven because "[if] the claim of ineffective assistance of trial counsel is implausible, then there could not be a reasonable probability that the result of the post-conviction proceedings would have been different." Clabourne, 745 F.3d at 377. Additionally, "[i]f trial counsel was not ineffective, then [petitioner] would not be able to show that PCR counsel's failure to raise claims of ineffective assistance of trial counsel was such a serious error that PCR counsel 'was not functioning as the "counsel" guaranteed' by the Sixth Amendment." Sexton v. Cozner, 679 F.3d 1150, 1159 (9th Cir. 2012) (quoting Strickland, 466 U.S. at 687).

    A.    Substantiality of Bowen's Ineffective Assistance of Counsel Claim: Diagnosis of Sexual Abuse Absent Physical Findings

Bowen argues he should benefit from an Oregon Supreme Court decision issued two months before his conviction became final, but four years after his trial had concluded and one year after his appeal was decided. The case is State v. Southard, 347 Or. 127, 139-41, 218 P.3d

104 (2009), in which the Oregon Supreme Court concluded the prejudice to a defendant outweighed the slight probative value of an expert's diagnosis of sexual abuse, in the absence of physical evidence of such abuse.[7] The Court commented such a diagnosis raises the risk the jury will conclude the victim's testimony is credible without engaging in its own credibility determination.

I continue to agree with four other decisions from this district that counsel's failure to anticipate Southard's holding on the admissibility of a sexual abuse diagnosis does not constitute ineffectiveness. Hatchett v. Hill, Civ. No. 06-1023-TC, 2011 WL 7443755 (D. Or. Dec. 21, 2011), adopted, 2012 WL 673767 (D. Or. Feb. 29, 2012); Balogh v. Kilmer, Civ. No. 3:10-1283-AC, 2012 WL 7830039 (D. Or. Nov. 29, 2012), adopted, 2013 WL 1352400 (D. Or. Apr. 3, 2013); Gresser v. Franke, Civ. No. 2:12-02073-HZ, 2014 WL 1155229 (D. Or. Mar. 20, 2014); and McLain v. Blackletter, Civ. No. 3:08-1440-KI, 2012 WL 3116186 (D. Or. July 27, 2012). When Bowen stood trial in 2005, "Oregon law allowed a medical expert to testify to a diagnosis of sexual abuse even if that diagnosis was based entirely upon what the victim told the expert." Gresser, 2014 WL 1155229, at *7 (citing State v. Wilson, 121 Or. App. 460, 462-67, 855 P.2d 657 (1993)). Only one case in this district holds differently. Wells v. Howton, Civ. No. 07-1117-TC, 2011 WL 5999356 (D. Or. Aug. 22, 2011), adopted, 2011 WL 5999359 (D. Or. Nov. 29, 2011). As I have previously concluded in another case, I do not find the rationale in Wells to

---

[7]Southard was decided October 1, 2009. Bowen was found guilty on March 7, 2005 and sentenced on June 10, 2005. Resp't Ex. 128, 101. He appealed his convictions and sentence, and the Oregon Court of Appeals issued a written decision on September 26, 2007, and adhered to its decision on Bowen's petition for reconsideration on June 11, 2008. Resp't Ex. 110, 113. After the Oregon Supreme Court denied review, and the United States Supreme Court denied Bowen's petition for writ of certiorari, the Oregon Court of Appeals issued a final judgment on December 2, 2009. Resp't Ex. 125.

be persuasive. See McLain, 2012 WL 3116186, at *7, n.1 (describing Wells as involving "a unique set of facts and a complicated procedural posture").

As many of the decisions above recognize, Southard reflected a change in Oregon's law that trial counsel was not required to anticipate. Indeed, the Oregon Court of Appeals explained in examining a similar PCR claim, "To render assistance that is constitutionally adequate, trial counsel need not be clairvoyant. Given the state of the law prior to Southard, petitioner's trial counsel did not fail to exercise reasonable professional skill and judgment at petitioner's 1998 trial" when an expert was permitted to testify as to the existence of a sexual abuse diagnosis. Umberger v. Czerniak, 232 Or. App. 563, 564, 222 P.3d 751 (2009) (per curiam). The Oregon Court of Appeals' decision is consistent with federal law. See Sophanthavong v. Palmateer, 378 F.3d 859, 870 (9th Cir. 2004) ("Strickland does not mandate prescience, only objectively reasonable advice under prevailing professional norms").[8]

Bowen attempts to distinguish the cases from this district by arguing those judgments were final before Southard was decided, whereas the Oregon Court of Appeals did not issue Bowen's final judgment until two months after Southard was issued. See Bowen's Br. in Supp. of Pet. 14-15 (Hatchett's appellate judgment issued May 8, 1998; Balogh's appellate judgment issued December 8, 2006; Gresser's appellate judgment issued in 2008; McLain's appellate

---

[8] Bowen submits affidavits from four criminal defense attorneys for the proposition that the standard of care at the time of Bowen's trial was to challenge expert testimony giving a sexual abuse diagnosis. Regardless of the propriety of these submissions, they do not change my view that Umberger persuasively explained the state of law prior to Southard. See also State v. Feller, 247 Or. App. 416, 421, 269 P.3d 110 (2011) ("At the time of the trial in this case, which occurred before Southard was decided, this type of diagnosis evidence was understood to be admissible" and thus defense counsel's failure to object demonstrates only the futility of such an objection).

Page 13 - OPINION AND ORDER

judgment issued June 17, 2003).  Bowen argues that because his judgment was not final at the time the Southard decision was issued, he is entitled to application of the ruling.  He cites Teague v. Lane, 489 U.S. 288, 310 (1989) (plurality) and Penry v. Lynaugh, 492 U.S. 302 (1989), arguing that "it is the state of the law at the time of finality of a conviction that controls."  Bowen's Response to State's Sur-Reply 2.

Bowen does not explain why it is that a change in Oregon's evidentiary law at the time his conviction finalized controls my analysis of the effectiveness of his trial counsel four years before.  Indeed, to the contrary, Strickland directs that reasonableness is judged *as of the time of counsel's conduct* and not in hindsight.  466 U.S. at 689-90 ("[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight"); Lowery v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994) (counsel's conduct evaluated as of time of conduct).

Bowen has not persuaded me that his ineffective assistance of trial counsel claim, on the issue of the diagnosis of sexual abuse, is substantial as required by Martinez.  Accordingly, any ineffective assistance of PCR counsel does not constitute cause to excuse his procedural default.

   B.  Substantiality of Bowen's Ineffective Assistance of Counsel Claim:  Identification of Bowen as the Perpetrator of the Abuse

As I indicated above, the second part of Bowen's ineffective assistance of trial counsel claim–that counsel was deficient for failing to object to the doctor's assertion that the perpetrator of the abuse was Bowen–is procedurally defaulted.  Habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the procedural default and actual

prejudice, or that the failure to consider the claims will result in a miscarriage of justice. Coleman, 501 U.S. at 750.

Again, Bowen relies on Martinez. Accordingly, just as above, Bowen must persuade the court that: (1) his ineffective assistance of trial counsel claim was "substantial;" (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review was the "initial" review proceeding; and (4) state law requires that an ineffective assistance of counsel claim be raised in an initial-review collateral proceeding. Trevino, 133 S. Ct. at 1918. Again, only the first two factors are at issue.

Bowen cites a number of cases for the proposition that, at the time of his trial, Oregon law prohibited a witness from vouching for the credibility of another. Indeed, it was well-settled that "'a witness may not give an opinion on whether he believes a witness is telling the truth.'" State v. Leahy, 190 Or. App. 147, 152-53, 78 P.3d 132 (2003) (quoting State v. Middleton, 294 Or. 427, 438, 657 P.2d 1215 (1983)); see also State v. Keller, 315 Or. 273, 285, 844 P.2d 195 (1993) (testimony that child had not been coached and that child was telling what happened to her body was improper vouching); State v. Milbradt, 305 Or. 621, 630, 756 P.2d 620 (1988) (en banc) (expert's opinion that person is not deceptive, could not lie without being tripped up, and would not betray a friend was impermissible vouching); State v. McQuisten, 97 Or. App. 517, 519-20, 776 P.2d 1304 (1989) (officer's testimony that complaining witness was not fabricating was inadmissible); State v. Remme, 173 Or. App. 546, 561, 23 P.3d 374 (2001) (expert may not testify as to absence of evidence of leading, coaching, or deception).

I do not agree with Bowen that this case falls in the category of cases on which he relies. Whether Dr. Ritzen's testimony constituted vouching for the truthfulness of T.H.'s allegations

Page 15 - OPINION AND ORDER

was not as clear-cut prior to Southard.  Indeed, in Logan v. State, 259 Or. App. 319, 313 P.3d 1128 (2013), the testimony at issue came from a CARES doctor who, after examining the alleged victim, recommended the victim not have contact with the defendant, that the defendant undergo a sex offender evaluation, and that the safety of any further contact between the defendant and his other child should be evaluated.  The defendant's attorney did not object to this testimony.  The Logan court undertook an exhaustive analysis of Oregon case law at the time of that defendant's trial and concluded, "the fact that [the doctor's] testimony allowed for [certain] inferences did not render it an impermissible comment on the [victim's] credibility, and accordingly, any objection to it [by the trial attorney] would have failed."  Logan, 259 Or. App. at 332.[9]

Given the line of cases prior to Southard, competent counsel reasonably could have believed an objection would not be well-taken and drawing attention to the testimony would not be helpful to the defense.  Styers v. Schriro, 547 F.3d 1026, 1030 (9th Cir. 2008) (petitioner must demonstrate that "had counsel so moved, there is [a] reasonable probability that the motion would have been granted"); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success"); Sexton, 679 F.3d at 1157 ("[c]ounsel is not necessarily ineffective for failing to raise even a nonfrivolous claim").  Bowen has not met his burden of showing his trial counsel's representation was not objectively reasonable.

---

[9]Notably, the Logan court distinguished State v. Sanchez-Alfonso, 352 Or. 790, 801-02, 293 P.3d 1011 (2012), in which there was no basis under Oregon Evidentiary Code 702 to admit a CARES report opining "[the victim] was physically abused by [the defendant]."  Like Logan, Bowen raises no claim alleging his counsel was ineffective for failing to object to expert testimony in violation of OEC 702.

Page 16 - OPINION AND ORDER

Even if reasonable jurists could argue that trial counsel acted deficiently, Bowen still fails to meet the first Martinez prong because he has not established prejudice. To do so, Bowen must show a reasonable probability that but for counsel's failure to object, the result would have been different. Hurles v. Ryan, 752 F.3d 768, 782 (9th Cir. 2014). Bowen has not shown that the evidence against him would have lessened to any noteworthy degree if Dr. Ritzen had not testified that Bowen was the perpetrator of the abuse described by T.H. in her CARES interview. Bowen's theory of the case–which he has not said was unreasonable–was that T.H. was a liar, a rebellious runaway, that she sought revenge when she was denied something, that she made up the sexual abuse to excuse her substance abuse, and that she benefitted by playing the role of the victim. Resp't Ex. 104, Tr. Vol. 2, 108-112 (opening statement); Resp't Ex. 106, Tr. Vol. 4, at 376-410 (closing argument). Thus, the disputed issue at trial was *whether* T.H. had been sexually abused; Bowen never attempted to defend the charge by arguing someone else was the perpetrator of any abuse. Given that Dr. Ritzen's diagnosis of sexual abuse was properly admitted at the time of Bowen's trial under the holding of State v. Wilson, 121 Or. App. 460, 855 P.2d 657 (1993), the expert's opinion that Bowen was the perpetrator of the abuse did not speak to the disputed issue. If the jury accepted Dr. Ritzen's testimony that T.H. had been sexually abused, which Dr. Ritzen was permitted to say at the time of Bowen's trial, it would also have accepted that Bowen was the perpetrator regardless of whether Dr. Ritzen was permitted to give her opinion on the matter. Additionally, T.H. testified in detail about Bowen's sexual abuse, and her testimony that Bowen was the perpetrator of abuse was substantiated by T.H.'s mother and T.H.'s friend. Accordingly, since there is no reasonable probability that an objection to Dr.

Ritzen's testimony would have altered the outcome of Bowen's conviction, Bowen's claim is insubstantial under Martinez. See Miller–El, 537 U.S. at 336.

Bowen's ineffective assistance of trial counsel claim–for failure to object to testimony regarding Bowen as the perpetrator of abuse–is not substantial as required by Martinez. Accordingly, any ineffective assistance of PCR counsel does not constitute cause to excuse his procedural default.

## CONCLUSION

Based on the foregoing, the petition for writ of habeas corpus [2] is denied. This proceeding is dismissed with prejudice. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is denied. See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this ___1st___ day of April, 2015.


                                            /s/ Garr M. King
                                            Garr M. King
                                            United States District Judge